**P. DOUGHERTY CO. v. THE WOLLASTON et al.**

**THE PROVIDENCE.**

**THE DUNMORE.**

**No. A 17742.**

United States District Court, E. D. New York.

Oct. 20, 1948.

Foley & Martin, of New York City (Christopher Heckman, of New York City, of counsel), for libelant.

Macklin, Brown, Lenahan & Speer, of New York City (Leo F. Hanan, of New York City, of counsel), for claimant.

KENNEDY, District Judge.

This is a libel in rem by the barge Providence against the barge Wollaston, which impleads the steam tug Dunmore in rem. Both Providence and Dunmore are in common ownership.[1]

On May 17, 1945, the steam tug Dunmore was proceeding eastward in Long Island Sound with three sea-going barges in tow. These barges were singled out on sisal hawsers about 200 fathoms long. In the early morning hours, when the tug and tow were in the vicinity of Bartlett's Reef, the hawser between Frederick, the head barge, and Providence, the second barge, parted. Providence immediately blew a signal (provided for in a code) which meant "Stern barges adrift."

Ten minutes later (the time lapse was necessary to kill her headway) Providence dropped her port bower anchor and paid out 40 or 45 fathoms of chain. This was at a point between Cornfield Light and New London.

In the meantime, Wollaston, the third barge whose hull design is slightly finer

---

[1] A description of the vessels involved is probably unimportant but, nevertheless, I furnish it. Dunmore is a steam tug 142 feet in length and 27.6 feet in beam; Frederick is a coal wooden barge 257.3 feet in length, 46 feet in beam and 23.6 feet in depth; Providence is a coal barge 228.7 feet in length, 40 feet in beam and 16 feet in depth; Wollaston is a coal barge 239.9 feet in length, 38.2 feet in beam and 19.5 feet in depth. All of the barges were laden with coal at the time of the disaster. It is of some significance that Providence has rather bluff bows, whereas Wollaston has not. In other words, the latter has a greater tendency to run than the former.

than that of Providence, continued to make headway, hoping, as she says, by the use of her rudder to take a sheer to starboard, and in this way to clear Providence. The visibility was about 1200 feet at the time, because of the existence of a fog. The tide was the end of the flood, running westerly.

The collision which gave rise to the litigation occurred because Wollaston overran Providence. The former struck the latter on the starboard side, the angle of collision being about 45 degrees. Wollaston claims that just prior to the collision she dropped her port anchor, that it took hold, and that in fact about 30 fathoms of cable had been paid out at the time of the impact. Providence, on the other hand, asserts that Wollaston never anchored prior to the collision, but merely dropped the port anchor out of the hawse pipe. Everything in the case supports the version given by Providence. Therefore, the problem of fault on the part of Wollaston can be simply stated: should she have anchored earlier?

■ I have given full consideration to the fact that Wollaston would run longer than Providence, because the latter would necessarily be checked by her bluff bows. But still it cannot be disputed that after she had been put on notice that Providence was out of control (the hawser having parted), Wollaston continued to make progress over the ground, overtook Providence, and collided with her. After Providence had anchored, Wollaston still had at least 20 minutes within which to take similar action, but did nothing. It is no excuse to say that the tide played its part; even a bargee would be expected to know that he would be set down by the tidal current. On these facts, it is obvious that Wollaston must be condemned.

■ I can find Dunmore guilty of no fault. It is suggested on the part of Wollaston that, after the hawser parted, Dunmore should have immediately rounded to with Frederick still in tow and picked up the drifting barges. Dunmore's master elected rather to proceed to a mooring, and then return. He doubtless thought, and with reason, that the barges adrift, reasonably handled, could have come to an anchor and lain in safety. I doubt that Dunmore's conduct constitutes even bad judgment. It certainly did not amount to fault.

■ Wollaston has the benefit of a "presumption" that the defective hawser (which belonged either to Dunmore or to the barge Frederick, in common ownership) was not fit for use. It is notoriously true that sisal hawsers, the use of which was compelled during the war, are not as dependable as manila, particularly when subjected to salt water. Nobody in the case suggests that there was anything about the condition of the hawsers which put Dunmore's master on notice. Under the circumstances, despite the so-called "presumption", I think there is no rational inference of fault flowing from the mere fact that the hawser parted.

■ Finally, there is not, and could not be, any basis for a claim of fault against Providence. She anchored within 10 minutes after she became adrift, and nobody could expect her to take quicker action. Concededly, she gave prompt warning when the hawser parted, and, although it is suggested in behalf of Wollaston that she might have made a further signal when she anchored, there is really nothing to support such a claim: the code made no provision for such a signal, and even if it did, it is clear beyond dispute that Wollaston knew, or should have known, that Providence would anchor promptly. There is, therefore, no causal connection between the disaster and the failure of Providence to make any signal in addition to the one that she did make.

Providence is entitled to a decree in the usual form against Wollaston's claimants. The claimants of Dunmore are entitled to a decree dismissing the impleading petition, both decrees to be with costs.

I have filed findings of fact and conclusions of law.