CULLEN TRANSPORTATION CO., AGENTS, Inc., as charterer in possession of THE COALDALE, Libellant,

v.

THE BOSTON, Red Star Towing & Transportation Company, Claimant.

No. 17920.

United States District Court,
E. D. New York.

Jan. 3, 1955.

Mahar & Mason, New York City, for libellant, by Frank C. Mason, New York City, of counsel.

Macklin, Speer, Hanan & McKernan, New York City, for claimant, by Leo F. Hanan, New York City, of counsel.

BYERS, District Judge.

This cause involves a striking of the seagoing barge Bradley by a like vessel the Coaldale, on May 15, 1946 off New London, Conn., at about 5:30 A.M. E.D.T.

These barges laden with coal were in tow of the tug Boston, bound for Providence. In the vicinity of Bartlett's Reef gas buoy (near New London) a heavy fog set in and as a result, the tug initiated the handling of the barges which led to the collision. So much is undisputed. Indeed the controversy is more argumentative as to the causes, than factual as to the actual happening.

The Boston was towing the barges singled out, with about 200 fathoms of hawser out to the Bradley, and the Coaldale followed at the end of from 150 to 200 fathoms of hawser from the Bradley.

The witnesses for the libellant were James Kydd, the captain of the Coaldale, and his second cousin Cyrus Kydd, who was in the bow giving signals to the former who was at the wheel.

The claimant called only Earl Jensen, the captain of the tug Boston. The deck hand or hands of the latter did not testify but no comment as to that was offered by libellant.

Also it should be observed that no one was called by either side from the Bradley.

Perhaps the lapse of more than eight and one-half years between the filing of the libel (April 30, 1946) and the trial (December 15, 1954) may account for the paucity of testimony by observers; there may be of course other reasons.

It will suffice to say that the Bradley being at anchor, the Coaldale overtook her on her port side, and under the force of the tide and current which took effect on the port side of the Coaldale, she bore down upon and across the bow of the Bradley and struck the latter with sufficient force to cause the starboard side damage to the Coaldale alleged in the libel. James Kydd said there was also damage to the Bradley, but as to that there is no other testimony.

The tug agrees that the foregoing took place, and that the latter had a line on the port quarter bitt of the Coaldale, and was trying to prevent the collision by exerting power on that line. The libellant's case is that the resultant move-

ment caused the Coaldale's bow to incline to starboard, in a kind of pivot action, since the force was being exerted somewhat laterally (to port) instead of astern as it should have been, and as probably would have been the case if the line from the tug had been placed on the stern bitt of the Coaldale, so that such force as was brought to bear would have tended to pull the barge straight astern and out of harm's way.

It is not without interest that the Answer pleaded that the collision took place *before* a line could be put out from the tug to the Coaldale, while the testimony of Jensen for the tug is that he did cause to be placed a line at the port quarter of the Coaldale, and that the line took a strain, i. e. "I pulled back" but not so as to prevent the striking.

Since the versions at the trial are thus in substantial agreement, the issue narrows down to the handling of the Coaldale at the critical time, and whether the tug did all that could be expected of prudent navigation in the circumstances.

The barges were converted schooners of substantial dimensions: Bradley, 266 x 40—draft 20 feet; Coaldale, 200 x 35—draft not shown. Both were laden to capacity, namely about 1,000 tons of coal. The Boston is a diesel tug, and her power is not questioned; nor is the seaworthy condition of the barges, except that the Coaldale had a crew of two men instead of three as called for by her license.

There is another cognate question as to her steering equipment in that her helm movements were obsolete, i. e., "right rudder" caused her to turn to *port*. As to this see 33 U.S.C.A. § 232, as added Aug. 21, 1935.

The bearing of the helm movement on the Coaldale's handling lies in the fact that under a "right rudder" she moved to port, and thus overtook the Bradley then at anchor, somewhat abreast and to the port of the latter, and thus was impelled to swing across the bow of the latter by the force of the tide and current; while if her response to the "right rudder" signal had been conventional,

she would have arrived perhaps parallel to the Bradley but to the latter's starboard, and so would not have been in a position to drift into collision.

The antecedent events may be briefly stated, reliance being had upon the narratives of the respective witnesses, since each vessel was hidden from the other in the prevailing fog, until slightly before the striking of the Bradley by the Coaldale.

When the tug was about to pass or in the act of passing the Bartlett's Reef buoy the tug blew a signal of "attention" to the barges. This was heard on the Coaldale and further signals were awaited. A later signal was blown and likewise heard, namely, "Prepare to anchor."

As to the next signal there is a dispute between Jensen and Kydd. The latter says it was to the Bradley to let go her anchor, and Jensen says he gave no such signal, but did blow one to that barge to let go her hawser to the tug. There is no dispute however that the Bradley did drop her anchor, and that it held. Whether the captain of that barge misunderstood the tug's instructions and acted upon that mistake is a matter upon which the court refuses to hazard a conjecture, in the absence of testimony from the Bradley, which for some undisclosed reason has not been forthcoming. Both Jensen and Kydd were credible witnesses, and each believed his testimony to be true; the latter said that there was a discussion between these two men at the time of the collision, and that Jensen said that the Bradley had anchored too soon, while Kydd insisted that the signal for the Bradley to do so had been given by the tug. If indeed the argument took place, it proves nothing as to the essential fact, but merely that there was an interchange of comments, probably in less than courtly phrase.

While a finding cannot be made for lack of disinterested testimony, it is difficult to understand why Jensen should have ordered the Bradley to anchor in view of the continued movement ahead of the Coaldale which was inevitable, since he blew no signal whatever to her

according to his testimony. A signal to the latter to anchor would have been appropriate, and even more, was probably required.

However Kydd said that he had heard (previous to the collision) a signal from the tug of "Right Wheel." This would have been consistent with a purpose to swing both barges wide of the Bartlett's Reef buoy, preparatory to bringing the tow to anchor; being uncontradicted this testimony is accepted. The place however of this signal in the sequence of blasts from the tug, cannot be stated, though the inference is strong that it preceded the signal to the Bradley to let go her hawser.

Kydd says he put the right wheel order into effect and swung his barge to port, which was contrary to the purpose of the tug as has been seen.

The tug began taking in her hawser to the Bradley, and when near enough to make her out in the fog, the position of the Coaldale coming up on the port side of the Bradley was soon observed. Then it was that Jensen blew to the Bradley to let go her hawser, which was perhaps misinterpreted to mean to refer to the anchor. Incidentally, it was not stated whether that hawser was completely taken in by the tug, but presumably it was. Then the tug passed alongside the starboard side of the Bradley and around under her stern and that of the Coaldale, and alongside the latter; then the tug's line was put on her port quarter bitt to prevent the striking which was then seen to be threatened. As has been said, the effort was unavailing.

Jensen testified that the two Kydds were observed by him to be taking in their own hawser from the Bradley, and thus that the Coaldale hauled herself into a critical position from which the tug could not extricate her.

The testimony is not convincing: James Kydd denied it, and no reason is suggested to question what he said.

There was no purpose to be served by such an action, since the tug intended to bring the tow to anchor; that result could as well be accomplished with the Coaldale strung out astern of the Bradley, as if they were to be more closely coupled, and under the prevailing conditions of fog and tide, the further apart these vessels were, the better. I think Jensen was mistaken in this respect.

As to the Boston and the Coaldale, it is said that a card containing a code of whistle signals was displayed in the wheel house of the tug and in the cabin of the Coaldale. Whether the Bradley was so equipped is left to surmise. The source of the code is likewise undisclosed, which is probably unimportant if both vessels were operated under the same set of directions; the assumption that they were may explain why the entire subject, so far as the testimony is concerned, quite closely partook of the atmospheric conditions prevailing in the waters where the collision occurred.

It is not too much to assume however that even according to the card in the cabin of the Coaldale, the "right rudder" signal would initiate a change of heading to starboard.

Again the testimony fails to reveal whether the tug was supposed to signal directly to the Coaldale, or that the latter should get her signals from the Bradley as relayed from the Boston, as in P. Dougherty Co. v. The Wollaston, D.C., 81 F.Supp. 765.

With the meager information at hand the court concludes that both the tug and the Coaldale were at fault. The former for not having put a line on the stern of the Coaldale in the effort to pull her clear of the Bradley; and the Coaldale for not having her steering gear so ordered that the "right rudder" signal was susceptible of performance as it was given. In other words, it is a half damage case.

If more detailed findings are desired, they may be settled on notice, with the interlocutory decree, which is to carry costs but not interest.